UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                    :
AMIN JUMAH,                         :
                                    :   Civil Action No. 13-2458 (RMB)
            Petitioner,             :
                                    :
       v.                           :   **MEMORANDUM OPINION**
                                    :
JANET NAPOLITANO et al.,             :
                                    :
            Respondent.             :
_____ :

This matter comes before this Court upon Petitioner's submission of his filing fee and his clarification supplementing the original pleading, see Docket Entry No. 4, and it appearing that:

1. Petitioner's original pleading (that arrived unaccompanied by the applicable filing fee or by Petitioner's in forma pauperis application) raised both civil rights and habeas challenges, which the Court qualified as 28 U.S.C. § 2241 and Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), claims.[1] See Docket Entries Nos 1 and 2.

2. The Court, therefore, directed Petitioner to clarify the nature of his challenges and to prepay the applicable filing fee or duly apply for in forma pauperis status. See Docket Entries Nos. 2 and 3. Petitioner submitted his $5.00 filing fee and detailed his claims, which are habeas in nature. See Docket Entry No. 4. The Court, therefore, reviews the

---

[1] Petitioner's habeas challenges asserted that he was an alien detainee unduly held in confinement without a bond hearing. See id.

allegations stated in Petitioner's original pleading in light of the clarifications he provided.

3. In his original pleading, Petitioner asserted that, upon conclusion of his federal sentence, he had been released into immigration custody on February 1, 2013. See Docket Entry no. 1, at 1. In his supplemental statement, Petitioner alleged that he should not be deemed subject to removal – or he should not be deemed subject to expedited removal – because, being of Palestinian origin, he qualifies as a stateless person. See Docket Entry No. 4, at 2-4. In addition, Petitioner reasserted that his confinement without a bond hearing was unlawful. See id. at 4. Finally, he made passim references to being released into general United States population upon obtaining a certain parole ruling, although it appears that such release on parole had taken place long prior to his federal incarceration that was completed on February 1, 2013. See id. at 2-4.

4. Petitioner's allegations indicate that, at this juncture, he is not entitled to relief.

5. To the extent Petitioner's challenges seek to avoid his removal, or seek a stay or other delay of his removal, this Court is without subject matter jurisdiction to entertain his claims. Section 1252(g), as amended by the REAL ID Act, Pub L. No. 109-13, 119 Stat. 231 (2005), explicitly bars judicial review by district courts of three classes of actions and decisions committed to the Government's discretion: "the 'decision or action to commence proceedings, adjudicate cases, or execute removal orders.'" Chehazeh v. Attorney General, 666 F.3d 118, 134 (3d Cir. 2012) (quoting Reno v. American Anti-Arab Discrimination Committee, 525 U.S. 471, 482 (1999)). Moreover, even if Petitioner's immigration judge issues an order of removal, and such order becomes final either upon affirmance by the Board of Immigration Appeals ("BIA") or upon expiration

of time to so appeal, Petitioner's challenges to his removal or his application for stay of removal could be entertained only by the Court of Appeals, not this Court. See REAL ID Act, 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this Act"). Correspondingly, all such challenges will be dismissed with prejudice.

6. The foregoing analysis leaves this Court with Petitioner's application for a bond hearing. While such challenges present a habeas claim over which this Court has proper § 2241 jurisdiction, Petitioner is not entitled to habeas relief at this juncture.

7. A habeas analysis of an alien detainee's claims begins with the determination of whether the alien is a pre-removal-period or a removal-period detainee. The "removal period" is triggered on the latest of the following: (a) the date when the order of removal becomes administratively final (that is, appeal to the BIA was either taken and ruled upon, or the time to appeal expired); or (b) if the removal order is judicially reviewed by the circuit court and, in addition, if a circuit court orders a stay of the removal, then it is the date of the circuit court's final order as to that removal, or (c) if the alien is detained or confined (except under an immigration process), then it is the date when the alien is released from confinement.[2] See 8 U.S.C. § 1231(a)(1)(B). If the qualifying event took place, the alien

---

[2] If, during the period of removal triggered by the then-latest of the three above-listed events applicable to a particular alien, the alien is subjected to a qualifying superceding event, such superceding event starts the alien's "removal period" anew, as many times as such superceeding events occur. See 8 U.S.C. § 1231(a)(1)(B). As the court explained:

> [There cannot] be only one removal period[:] . . . that is the only rational reading of the statute. . . . [T]he statute provides that the removal period begins on the

3

is deemed a removal-period detainee. Section 1231(a)(1)(A) provides that the Government has a 90-day "removal period" to remove an alien ordered removed from the United States, and detention during that removal period is mandatory.[3] See 8 U.S.C. § 1231(a)(2). Moreover, even after the 90-day "removal period," the Government may further detain the alien, under 8 U.S.C. § 1231(a)(6), for a "certain" period of time.

> Specifically, recognizing that some countries might never agree – or be able – to accept their citizens awaiting to be removed there from the United States and, thus, these detainees might end up being detained "indefinitely" (i.e., effectively spending the remainder of their lives in confinement awaiting their never-materializing removal), the Supreme Court held that aliens may be detained under § 1231(a)(6) for "a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas v. Davis, 533 U.S. at 689. Being mindful that its holding would lead to difficult judgment calls in the courts, the Supreme

---

latest of several dates. The passing of one date does not stop the operation of the statute. In a sense, the only way to apply the statute to a given situation is retrospectively. That is, the removal period begins when the removal order becomes final. If a court issues a stay [or a new detention unrelated to removal proceedings takes place], the removal period begins [anew] when the stay is lifted [or when such new detention ends]. Therefore, the only way to determine when the removal period begins, or began, is to look at what events already have occurred. If there is another potential event, there is another potential beginning date for the removal period. The only sensible reading of this provision is that [DHS/ICE] is required to effectuate the removal within 90 days of certain events, but will have another 90 days if another one of the designated events occurs at a later date. The obvious reason for this is that [DHS/ICE] 's authority to effect the removal is suspended due to the occurrence of the later event . . . .

Michel v. INS, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000); accord Morena v. Gonzales, 2005 U.S. Dist. LEXIS 37989, at *18 (M.D. Pa. Oct. 4, 2005); Atkinson v. INS, 2002 U.S. Dist. LEXIS 11335, at *5 (E.D. Pa. June 25, 2002); Marcelus v. INS, 2002 U.S. Dist. LEXIS 795, at *6 (E.D. Pa. Jan. 16, 2002); Dunbar v. Holmes, 2000 U.S. Dist. LEXIS 17048, at *6-7 (E.D. Pa. Nov. 28, 2000).

[3] In addition, § 1231(a) provides that this "removal period" shall be extended, and the alien may remain in detention during such extended period, if the alien "acts to prevent the alien's removal [ensuing from his/her] order of removal." 8 U.S.C. § 1231(a)(1)(C).

> Court, "for the sake of uniform administration in the federal courts," recognized a six-month "presumptively reasonable period of detention." Id. at 700-01.

Hany El Sayed v. Holder, 2012 U.S. Dist. LEXIS 16808, at *7-8 (D.N.J. Feb. 9, 2012).[4]

8. In contrast, an alien held in the immigration custody during the time which cannot qualify as the alien's "removal period" has no basis to raise Zadvydas challenges. Rather, that alien could raise habeas claims seeking a bond hearing if he has been held in immigration confinement for a unduly prolonged period of time within the meaning of § 1226(c) (that is, the statute, which does not expressly provide for a bond hearing). Although the Supreme Court, in Demore v. Kim, held that Section 1226(c) "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process" and, thus, detention with a bond hearing is necessarily valid, 538 U.S. 510, 523 (2003), the Court of Appeals has stated:

> § 1226(c)[] . . . implicitly authorizes detention for [only] a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's

---

[4] After establishing this presumptively reasonable period of detention, the Supreme Court, however, stressed, in unambiguous terms, that even

> [a]fter this 6-month period, o[nly if] the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

5

> purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.

Diop v. ICE/Homeland Sec., 656 F.3d 221, 231 (3d Cir. 2011). The Diop Court did not provide a cut-off date when a pre-removal-period alien's claim sufficiently matures to warrant habeas relief in the form of an order directing a bond hearing. However, the case law developed thus far offers this Court guidance. In Demore, the Supreme Court upheld a pre-removal detention of about six months without a bond hearing. See 538 U.S. 510. The Court of Appeals in Diop, on the other hand, found that a pre-removal detention of 35 months without a bond hearing was too long. See 656 F.3d 221. In an unpublished decision, Contant v. Holder, 352 F. App'x 692 (3d Cir. 2009), the Court of Appeals upheld, as reasonable, a nineteen-month pre-removal detention without a bond hearing. Analogously, in Bulatov v. Hendricks, the Court upheld a 30-month detention without a bond hearing, noting that the delay was largely caused by the Court of Appeals' review. See 2012 U.S. Dist. LEXIS 143671 at *19 (D.N.J. Oct. 4, 2012). Analogously, a seven-month and a one-year pre-removal-period detentions without a bond hearing have been deemed in compliance with the due process safeguards. See Bete v. Holder, 2012 U.S. Dist. LEXIS 43438, at *1 (D.N.J. Mar. 29, 2012); Maynard v. Hendrix, 2011 U.S. Dist. LEXIS 142435, at *11 (D.N.J. Dec. 12, 2011).

9. Here, Petitioner asserts that he is a pre-removal-period detainee who has been held in immigration custody since February 1, 2013, that is, just a few months and for a period shorter than that validated by the Supreme Court in Demore. Therefore, at this juncture, Petitioner's Demore-Diop claims, if such were intended, are meritless. However, in the

event he remains in immigration custody for a prolonged period of time triggering the Diop holding, his claims might ripen. Accordingly, his Diop challenges will be dismissed without prejudice to raising them by means of a new and separate § 2241 petition if and when he develops a valid factual basis for such claims.

10. Alternatively, in the event Petitioner is ordered removed, and his order of removal becomes final, but he is not removed due to his status of a stateless person and, being held in custody of immigration officials, he develops a viable factual basis to assert that there is no significant likelihood of his removal within the foreseeable future, Petitioner also may raise those claims by means of a new and separate § 2241 petition. Accordingly, his Zadvydas challenges will, too, be dismissed without prejudice.

11. Finally, as to Petitioner's statement that, at a certain point in time, he was paroled into general population the Court construes it as asserting that Petitioner was not taken into immigration custody right when he was officially released from serving his penal sentence. However, even so construed, Petitioner's allegations merit no habeas relief. See Sylvain v. AG of the United States, __ F.3d __ , 2013 U.S. App. LEXIS 7937 (3d Cir. N.J. Apr. 22, 2013) (even if 8 U.S.C.S. § 1226(c)(1) calls for detention "when" an alien is released, nothing in the statute suggests that officials lose authority if they delay and, therefore, an alien is not entitled to habeas relief simply because immigration officials delayed taking him into custody). In other words, if Petitioner intended to raise a Sylvain claim, his challenges are subject to dismissal with prejudice.

12. Since Petitioner's habeas challenges, no matter how construed, warrant no habeas relief, the Petition, Docket Entry No. 1, as clarified by Petitioner's statement, Docket Entry No.

4, will be dismissed.  Such dismissal will be with prejudice as to all Petitioner's claims challenging: (a) the process of his immigration proceedings; (b) his potentially upcoming order of removal; and (c) the fact that he was not taken into immigration custody immediately upon his release from the underlying penal confinement.  Such dismissal will be without prejudice to Petitioner's due process claims in the event his challenges ripen within the meaning of Diop, or if he develops a non-speculative factual basis shifting the burden to the Government.  An appropriate Order follows.

                                                    s/Renée Marie Bumb
                                                    **RENÉE MARIE BUMB**
                                                    UNITED STATES DISTRICT JUDGE

Dated: May 23, 2013